IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **STEWART TITLE GUARANTY COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION 08-0568-WS-C |
| ) | |
| **SOUTHERN LAND TITLE, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER**

      This matter is before the Court on the parties' cross-motions for summary judgment. (Docs. 27, 32). The parties have submitted briefs and evidentiary materials in support of their respective positions, (Docs. 28-31, 33-35, 38-44), and the motions are ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the plaintiff's motion is due to be denied and that the defendant's motion is due to be granted in part and denied in part.

**BACKGROUND**

      The plaintiff issues title insurance policies through other entities, including the defendant. The defendant, a title agent, searches title records before issuing a title commitment that notes any exceptions to title. The instant dispute arose after the defendant missed a recorded mortgage, resulting in issuance of a title policy without an exception for the mortgage and, according to the plaintiff, a seven-figure loss under its policy. The primary question in this lawsuit is which party ultimately bears that loss.

      The parties' relationship is governed by a "Title Insurance Underwriting Agreement" executed in 1989, in which the plaintiff is denoted as "UNDERWRITER" and the defendant as "COMPANY." (Doc. 30, Exhibit 1). The form is preprinted but

was altered by the parties in a manner shown in the bracketed material below.

>	5.  DIVISION OF LOSS AND LOSS EXPENSE:
>
>	The term loss shall include the amount paid to or for the benefit of the insured as well as loss adjustment expense including any cost of defending the claim resulting in the loss.
>
>	(a) On each loss under a title policy issued pursuant to this Agreement not due to COMPANY'S [gross] negligence or fraud, COMPANY shall be liable to UNDERWRITER for the first $2,500 [$500] of such loss.
>
>	(b) On each such loss due to the fraud or intentional act or omission of COMPANY or its employees, representatives, or agents, or due to the negligence thereof, COMPANY shall be liable to UNDERWRITER for the entire amount of such loss.  Such losses include, but are not limited to the failure of the title plant, failure to discover or report any instrument of record affecting title, violation of escrow instructions, failure to follow UNDERWRITER'S instructions, and the failure to prepare a title policy in a manner that properly reflects any such instrument contained in the search of title.
>
>	(c) On each loss suffered by UNDERWRITER by reason of its Insured Closing Letter issued pursuant to Clause 2E of this Agreement, COMPANY shall be liable to UNDERWRITER for the entire amount of such loss.

(*Id.* at 2).

The plaintiff argues that this provision unambiguously makes the defendant liable for its simple negligence in failing to note the recorded mortgage and that it is uncontroverted that the defendant was negligent in this respect.  In the alternative, should the Court find the provision ambiguous, the plaintiff argues that uncontroverted parol evidence requires that the provision be construed to make the defendant liable for simple negligence.  Finally, the plaintiff argues that a loss in the amount of $1,272,402.64 is also uncontroverted.  (Doc. 29 at 1-2, 14).

The defendant asserts that the provision is ambiguous, but it argues that the ambiguity must be resolved in its favor using rules of contract interpretation, without resort to extrinsic evidence.  The defendant continues that gross negligence is not at issue in this lawsuit, compelling judgment in its favor.  (Doc. 34 at 10-11).

**DISCUSSION**

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. [citation omitted] If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993).  "If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to summary judgment."  *Clark*, 929 F.2d at 608 (internal quotes omitted).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[1]  Similarly, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995).

---

[1] *E.g., Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."); *accord Jones v. Sheehan, Young & Culp, P.C*., 82 F.3d 1334, 1338 (5th Cir. 1996); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1139 (7th Cir. 1984); *Karlozian v. Clovis Unified School District*, 2001 WL 488880 at *1 (9th Cir. 2001); *see also* Local Rule 7.2.

Accordingly, the Court's review is limited to those exhibits, and those portions of exhibits, to which the parties have specifically cited. The Court's review is similarly limited to those arguments they have expressly advanced.

### I. Contract Interpretation.

Both parties appeal to Alabama law to construe the contract. Under Alabama law, "[t]he issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide." *American Resources Insurance Co. v. H & H Stephens Construction, Inc.*, 939 So. 2d 868, 873 (Ala. 2006). "A contractual provision is ambiguous if it is reasonably susceptible of more than one meaning." *FabArc Steel Supply, Inc. v. Composite Construction Systems, Inc.*, 914 So. 2d 344, 357 (Ala. 2005). Conversely, "terms are unambiguous [when they are] susceptible of only one reasonable meaning." *Doster Construction Co. v. Marathon Electrical Contractors, Inc.*, 2009 WL 3064789 at *4 (Ala. 2009) (internal quotes omitted).

As a matter of law, the loss provision is ambiguous under this test. Paragraph 5(a), as amended, provides that the defendant will pay the first $500 of a loss caused by simple negligence, while paragraph 5(b) states that the defendant will pay the entirety of a loss caused by simple negligence. As noted, the defendant concedes the provision is ambiguous. (Doc. 34 at 11). While the plaintiff argues that paragraph 5(b), standing alone, is unambiguous, (Doc. 29 at 16; Doc. 38 at 2), the Court must review the entire "provision" for ambiguity, not simply one portion of the provision.

The plaintiff asserts that a finding of ambiguity immediately opens the door to the introduction of extrinsic evidence to resolve the ambiguity. (Doc. 38 at 5). While some Alabama opinions may support that proposition, it has been definitively rejected.

> Some of this Court's decisions indicate that, once the court determines that a contract is ambiguous, it is for the finder of fact to resolve the ambiguity. [citations omitted] However, ... the court, as a matter of law, should apply rules of construction and attempt to resolve any ambiguity in the contract before looking to factual issues to resolve the ambiguity. ... If the application of such

> rules is not sufficient to resolve the ambiguity, factual issues arise[, and one may] go beyond the four corners of the agreement ....

*Extermitech, Inc. v. Glasscock, Inc.*, 951 So. 2d 689, 694-95 (Ala. 2006) (internal quotes omitted). The plaintiff itself, (Doc. 29 at 16), quotes at length another case supporting exactly this proposition. *University Federal Credit Union v. Grayson*, 878 So. 2d 280, 292 (Ala. 2003). In accordance with Alabama law, the Court therefore ignores the extrinsic evidence offered by both parties before resolving the antecedent question whether the ambiguity can be resolved using rules of contract interpretation.

The defendant identifies two such rules. First, "typewritten provisions prevail over printed matter." *ERA Commander Realty, Inc. v. Harrigan*, 514 So. 2d 1329, 1335 (Ala. 1987). "This is a long-held presumption in the law, because typewritten provisions are thought to have commanded stricter attention than a standard form contract provision." *Id*. The same rule applies to handwritten terms. *Industrial Machinery, Inc. v. Creative Displays, Inc*., 334 So. 2d 743, 749 (Ala. 1977). As applied here, the handwritten insertion of the adjective "gross" before "negligence" in paragraph 5(a) reflects that the parties deliberately sought to restrict the defendant's unlimited liability to losses resulting from its gross negligence.

Second, "if there exists inconsistency between two clauses of a contract which cannot be reconciled, the inconsistency must be resolved in favor of the prior clause, unless an intention to thereafter qualify is plainly expressed." *Homes of Legend, Inc. v. McCullough*, 776 So. 2d 741, 746 (Ala. 2000) (internal quotes omitted). As applied here, the defendant's unlimited liability is restricted to gross negligence in paragraph 5(a), before it is extended to simple negligence in paragraph 5(b), and 5(b) contains no plainly expressed intent to qualify the gross negligence limitation of 5(a).

These rules are adequate to resolve the apparent conflict between the provisions and eliminate all ambiguity. By deliberately inserting the qualifier "gross" in paragraph 5(a), the parties unequivocally restricted the defendant's unlimited liability to losses resulting from gross negligence. That they failed to make a similar change in paragraph

5(b) is immaterial because their intention was clearly and immediately expressed in the preceding sub-paragraph.

The plaintiff does not challenge the application of either rule of construction championed by the defendant,[2] nor does it identify any competing rules of construction. Instead, it attempts to harmonize paragraphs 5(a) and 5(b). According to the plaintiff, paragraph 5(a) addresses only liability for the "first" $500 of loss, without precluding liability for additional loss under paragraph 5(b). (Doc. 29 at 18; Doc. 38 at 2). The problem is that this construction renders the insertion of "gross" pointless; under paragraph 5(b), the defendant was already liable for the first $500 of loss occasioned by its simple negligence. Because "parties to a contract will not be imputed with using language that is meaningless or without effect," *Black Diamond Development, Inc. v. Thompson*, 979 So. 2d 47, 51 (Ala. 2007) (internal quotes omitted), the Court is required to conclude that the parties intended to effect a change in the printed contract's scope by adding the term "gross." Unfortunately for the plaintiff, the qualifier "gross" can have no meaning other than that of precluding liability for losses over $500 arising from simple negligence.[3]

The plaintiff argues that paragraph 5(b) is the "heart" of the loss provision, such that the parties "necessarily" would "have" to modify it in order to alter the defendant's liability for simple negligence. (Doc. 29 at 17-18; Doc. 38 at 1). This is simply a futile attempt to neutralize the inevitable effect of modifying paragraph 5(a) to limit liability for simple negligence to $500. That change having been accomplished by inserting the

---

[2]On the contrary, it describes them as "established rules of construction." (Doc. 38 at 3).

[3]As part of its impermissible extrinsic evidence, the plaintiff offers the testimony of its agent that, by inserting the term "gross," the defendant's "liability would be limited to $500 and only in the event of gross negligence." (Bailey Deposition at 42). That is, he suggests the change protected the defendant if it were grossly negligent but not if it were simply negligent. That construction is grammatically insupportable.

qualifier "gross" in paragraph 5(a), no additional treatment of the subject in 5(b) was required in order to effect the change. The failure to make a corresponding change in 5(b) did create an ambiguity but, as noted above, that ambiguity has been resolved according to Alabama law using rules of contract interpretation.[4]

## II.  Gross Negligence.

The defendant asserts that the plaintiff "does not contend that what is alleged against Southern Land constitutes gross negligence." (Doc. 34 at 5, 10; Doc. 40 at 9). The defendant has failed to explain or support its position.

The defendant first cites a page from the Martin deposition, but it consists only of a partial and innocuous answer to an unknown question, plus his statement that "the only information" he has is that the mortgage was of record yet wasn't noted as an exception. (Doc. 33, Exhibit C at 46). The defendant does not identify Mr. Martin or explain how his limited information somehow eliminates a contention that the defendant was grossly negligent.

The defendant next cites the testimony of Mr. McBee that "[i]t's not my understanding that gross negligence or fraud occurred." (Doc. 41, Exhibit F at 13). The defendant does not explain how McBee's "understanding" could nullify a contention by

---

[4]The plaintiff complains that the parties' "real" intention, as reflected by extrinsic evidence — including the testimony of its agent who added "gross" to the loss provision — was not to limit the defendant's liability for simple negligence. (Doc. 38 at 4-11). The problem is that "the law of contracts is premised upon an objective rather than a subjective manifestation of intent approach." *McLemore v. Hyundai Motor Manufacturing, LLC*, 7 So. 3d 318, 333 (Ala. 2008) (internal quotes omitted). The language used, especially as viewed through standard rules of contract interpretation, objectively manifests precisely such an intention. As discussed in text, the plaintiff cannot resort to extrinsic evidence in an effort to undo the effect of the language it employed.

the plaintiff that the defendant was grossly negligent.[5]

Finally, the defendant asserts that McBee admitted the plaintiff would not have brought suit if it believed the agreement released the defendant for simple negligence. (Doc. 40 at 9-10). In fact, all McBee stated was that he would not have authorized suit if he didn't think the defendant was contractually liable. (Doc. 41, Exhibit F at 15).

In its reply brief, the defendant changes tacks, arguing for the first time that there is no issue of gross negligence raised in the complaint and that the plaintiff's witnesses admit there are no facts to show gross negligence. (Doc. 44 at 7). District courts, including this one, ordinarily do not consider arguments raised for the first time on reply. *Park City Water Authority, Inc. v. North Fork Apartments, L.P.*, 2009 WL 4898354 at *1 n.2 (S.D. Ala. 2009) (collecting cases). Because the defendant offers no reason to depart from this rule, its tardy arguments will not be considered.[6]

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is **granted** to the extent it argues that its exposure for simple negligence is limited to $500 and is in all other respects **denied**. The plaintiff's motion for summary judgment is **denied**.

DONE and ORDERED this 29th day of December, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[5] While the question posed to McBee was, "Do you contend that the actions of Southern Land Title as alleged in the complaint constitute gross negligence or fraud?", McBee did not directly answer that question.

[6] It is therefore unnecessary to consider the parties' differing opinions as to what "gross negligence" means.